### THE THOMAS B. GARLAND.

#### FIFIELD et al. v. THE THOMAS B. GARLAND.

(District Court, D. New Jersey. November 30, 1897.)

SALVAGE—COMPENSATION—STRANDING.

The services of a steamer, worth about $7,000, which was loaded and ready to proceed to sea, in pulling off at high tide, at considerable risk and some danger to herself, after an unsuccessful attempt at the previous high tide, a schooner worth $8,000, grounded in the shifting sands on the inner shoal of the inlet to Great Egg Harbor, N. J., *held* to be salvage services, for which $500 should be awarded.

This was a libel in rem by John C. Fifield and others against the schooner Thomas B. Garland to recover compensation for salvage services.

H. H. Voorhees and Henry R. Edmunds, for libelants.

B. C. Godfrey and John J. Crandall, for claimants.

KIRKPATRICK, District Judge. On the 8th day of May, 1896, the schooner Thomas B. Garland, in attempting to enter Great Egg Harbor Inlet, in this district, with a cargo of ice consigned to Frank Champion, of Ocean City, in the county of Cape May, went aground on what is known as the "Inner Shoal," on the west side of the channel. The hour of her grounding was about 5:30 in the afternoon, at a time when the tide was at the top of the flood. The wind was light, and the schooner was unable of herself to float. The ebbing tide made matters worse, and the life-saving crews of the stations on the near-by land visited the vessel, and were unable to furnish any relief. The captain and pilot left the ship, and went to Somer's Point, which is on the inside of the inlet, across the bay on the mainland, and there interviewed the captain of the steam tug Nellie Rawson, and asked for assistance. The Rawson was loaded and ready to put to sea, but agreed that if able to reach the schooner, and pull

her off in the morning, so as to avail herself of the morning tide to cross the bar, she would render assistance. The amount of water in the channel on the side on which the schooner was grounded, as well as on the bar at the outlet of the inlet, was hardly sufficient at high water to float either the schooner or the steam tug. The Rawson, with the captain of the schooner aboard, visited the schooner on the top of the morning tide, and made several unsuccessful attempts to float her. The steam tug then went away, and endeavored to cross the outer bar of the inlet to proceed upon its voyage, but was unable to do so, on account of the want of sufficient water. At the request of the captain of the schooner, the Rawson again made fast to the schooner at the top of the flood tide in the evening, and after successive efforts, by aid of its own power and that of anchors which it had run, succeeded, by surging, in loosening the schooner from the sand, and setting her afloat. Prior to the afternoon attempts to float the schooner, she had been lightened of perhaps one-quarter of her cargo by jettison. The channel leading into the Great Egg Harbor Inlet is narrow and dangerous, surrounded on either side by treacherous shoals of shifting or quick sands, and the amount of water which the Rawson, loaded, required, was the full tide, and therefore the services which she rendered were of a dangerous nature. In the attempts to loosen the schooner from the sand by the surging operation, the bitts of the steamer were loosened, and the boat otherwise damaged, so much so that afterwards it was necessary to put her on the dock, and $151.90 of repairs were found to be necessary.

I am satisfied from the evidence that the position of the Garland after she went aground was a dangerous one. She was on the west bank of the channel, in shoal water, distant about one-quarter of a mile from the shore, on a bottom of shifting sand, exposed to any storm which might arise, and protected from the force of the open seas only by a bar upon which at high tide there was about eight feet of water. Of herself the schooner could do nothing, and the only available aid was that which was afforded by the Rawson. No nearer help was nigh, nor could any be obtained without sending to either New York or Philadelphia, which would entail a delay of perhaps 36 hours. Under the circumstances, I consider the services rendered by the Rawson meritorious, for which they are entitled to salvage.

This claim for salvage is objected to on the part of the claimants on the ground that, before entering upon it, the captain of the Rawson had agreed to perform the service for the sum of $50. This is denied by the captain of the Rawson, and the evidence on the part of the claimants does not support it. The value of the schooner is about $8,000, and that of the tug about $7,000. Under the circumstances, I think a fair award to the libelants for the services rendered would be $500. Let a decree be entered for that amount, with costs.